**GETTY OIL COMPANY, a corporation, and Mono Power Company, a corporation, Plaintiffs,**

v.

**Cecil D. ANDRUS, Secretary of Interior of the United States of America, Geothermal Resources International, Inc., a corporation, and Chevron Oil Company, a corporation, Defendants.**

No. CV 75–1280–AAH.

United States District Court, C. D. California.

June 29, 1977.

Hanna & Morton by Edward S. Renwick, and Edward D. MacFarlane, Los Angeles, Cal., for plaintiffs.

William D. Keller, U. S. Atty. by Donald J. Merriman, Asst. U. S. Atty., Los Angeles, Cal., for defendant Cecil D. Andrus.

Costello, Manfredi & Thorpe by George A. Manfredi and Brien F. McMahon, Los Angeles, Cal., for defendant Geothermal Resources Intern., Inc.

Pillsbury, Madison & Sutro by Donald E. Peterson, San Francisco, Cal., for defendant Chevron Oil Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

The above-entitled cause came on regularly for trial on April 11, 1977 in the above-entitled Court, the Honorable A. Andrew Hauk, Judge, presiding, sitting without a jury.

The parties having submitted extensive trial briefs, the matter was tried on April 11, 1977 whereupon documentary evidence was introduced, offers of proof were made, and the cause was argued by counsel and submitted for decision. The Court having reviewed and considered the evidence, read the parties' briefs, and considered the arguments of counsel, and the matter having been submitted for decision, the Court being fully advised in the premises, now renders its Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

1. Plaintiff Mono Power Company (hereinafter "Mono") is and at all times material hereto was a corporation existing under the laws of the State of California, with its principal place of business in the City of Rosemead, County of Los Angeles, within the Central District of California.

2. Plaintiff Getty Oil Company (hereinafter "Getty") is and at all times material hereto was a corporation existing under the laws of the State of Delaware, with its principal place of business in the City of Los Angeles, County of Los Angeles, within the Central District of California.

3. Defendant Geothermal Resources International, Inc. (hereinafter "GRI") is and at all times material hereto was a corporation existing under the laws of the State of Delaware, with its principal place of business in the City of Los Angeles at Marina del Rey, County of Los Angeles, within the Central District of California. At all times material hereto, GRI was and is conducting business within the Central District of California.

4. Defendant Chevron Oil Company (hereinafter "Chevron") is and at all times material hereto was a corporation existing under the laws of the State of California, with its principal place of business in the City of San Francisco, California. At all times material hereto, Chevron was and is conducting business within the Central District of California.

5. At the time of the trial of this action, Cecil D. Andrus was and now is Secretary of Interior of the United States of America. Prior to Cecil D. Andrus' becoming Secretary of Interior, Thomas S. Kleppe was Secretary of Interior. Prior thereto, Stanley K. Hathaway was Secretary of Interior. Prior thereto, Rogers C. B. Morton was Secretary of Interior.

6. This is an action for judicial review under the Administrative Procedure Act ("APA") of a decision of the Secretary of Interior (hereinafter "the Secretary") approving defendant GRI's application to convert certain placer mining claims to federal geothermal steam leases pursuant to the Geothermal Steam Act of 1970 (30 U.S.C.A. §§ 1001–1025) (hereinafter "the Act"), and the Secretary's subsequent issuance of a geothermal lease to GRI.

7. The administrative record before the Department of Interior consisted of Exhibits 1–A through 1–G received in evidence by this Court and has been numbered consecutively from pages 1 through 684, inclusive. As disclosed by the administrative record, the facts surrounding the Secretary's consideration and approval of GRI's application are as follows:

8. In 1959, Magma Power Company ("Magma") acquired a group of geothermal leases on private lands in the Casa Diablo-Long Valley area of California. Magma concluded that a viable commercial development of the area for geothermal purposes was not possible without the inclusion of nearby federal lands and that placer mining claims were the appropriate way to obtain geothermal rights on those lands. Consequently, in 1959, Magma proceeded to acquire certain placer mining claims within that area. (Administrative Record (hereinafter "A.R."), 563–64)

9. During 1959, Magma and an associate, Nevada Thermal Power Company ("Nevada"), commenced exploration and development in the Casa Diablo area and expended substantial sums for the actual drilling of wells. However, by 1960 it became apparent to Magma and Nevada that a large amount of capital—in excess of Magma's financial capabilities—would be needed to develop the prospect to the point where a utility company would be interested in buying the geothermal steam. (A.R., 563–65) Accordingly, in July, 1960, Magma and Nevada entered into a partnership agreement with Endogenous Power Company ("Endogenous"), a California limited partnership formed for the express purpose of financing the exploration and development of the lands in the "Mammoth area." (A.R., 561–62, 565, 574–85) The partnership among Magma, Nevada and Endogenous was known as the "Magma-Endogenous Power Project." (A.R., 575) The partnership agreement provided that the funds contributed by Endogenous were to be expended for the "exploration for and development of natural steam, steam power and thermal energy" from the "lands situated within an area ten (10) miles in all directions from the outer boundaries of the lease known and described as the Ritchie Lease . . . ." (A.R., 574–76) The lands so described included the federal lands at issue in this action. (A.R., 576, 669)

10. During 1962, the Endogenous partners, in effect, incorporated the partnership by exchanging all of its assets for all of the stock of Natural Steam Corporation. In 1965, Natural Steam Corporation, Vulcan Thermal Power Company, Hawaii Thermal Power Company and Tecopa Development Company merged into a single company which ultimately changed its name to Geothermal Resources International, Inc. ("GRI"). (A.R., 562)

11. On or about June 8, 1961, the Secretary of Interior announced that the Department considered the drilling for geothermal steam on public lands a trespass and ordered that no further drilling take place on federal lands. (A.R., 565, 673) Accordingly, the exploration work financed by GRI was confined to drilling on private lands or to annual assessment work with respect to mining claims on the federal domain. (A.R., 566–67, 669)

12. From 1960 through 1972, GRI— known for part of that time as Endogenous or Natural Steam—made expenditures totalling not less than $352,714.37 for the exploration, development or production of geothermal steam on private lands approximately three to seven miles from the federal lands at issue in this action. (A.R., 100–151, 561–69, 660–63, 669) Of this amount, $342,714.37 was expended by GRI prior to December 24, 1970. (A.R., 660–65)

13. ·There is no evidence in the administrative record that Standard Industrial Minerals, Inc. ("Standard Industrial") made any expenditures for the exploration, development or production of geothermal steam. The Secretary's reference, in his February 13, 1975 dismissal of plaintiffs' protest, to "Standard Industrial" as the entity which made substantial geothermal expenditures was erroneous. Why it was done does not appear.

14. The Ninety-First Congress enacted the Geothermal Steam Act for the purpose of making geothermal steam and associated resources on the public domain available for exploration and development. The Act became effective on December 24, 1970.

15. On January 14, 1971, the Secretary gave notice to prospective applicants for conversion rights under the Act of the procedure to be followed in claiming conversion rights. The notice was published in the *Federal Register* on Friday, January 15, 1971 (Vol. 36, No. 10, at 623).

16. On March 26, 1971, by instrument entitled Assignment of Placer Mining Claims and recorded in Mono County, California on December 17, 1973 in Volume 163, page 80, Standard Industrial sold, assigned, transferred and conveyed to Magma certain placer mining claims commonly known as Little Antelope Nos. 5 and 6, Kaolinite Nos. 1 to 55, inclusive, and Huntley Placer Nos. 1 to 41, inclusive. (A.R., 169–78)

17. On June 15, 1971, by instrument entitled "Assignment of Placer Mining Claims" and recorded in Mono County, California on December 6, 1974 in Volume 179, page 155, Magma transferred, assigned and conveyed to GRI certain of the placer mining claims Magma had acquired from Standard Industrial, consisting of Huntley No. 33 and Kaolinite Nos. 22 to 50, inclusive. (A.R., 179–86)

18. On June 22, 1971, counsel for GRI, Mr. Joseph Aidlin, filed GRI's "Application to Convert Placer Mining Claims on the Public Domain to Federal Geothermal Leases" with the Sacramento office of the Bureau of Land Management (hereinafter the "Bureau"). Prior to June 22, Mr. Aidlin

had been advised by Bureau employees in both the Sacramento and Riverside officers that GRI's application should be filed with the Sacramento office. The Bureau's Sacramento office accepted GRI's application on June 22 and several days later transmitted the application to the Riverside office. (A.R., 670–73) (Pretrial Conference Order, ¶ V(A))

19. As of September 7, 1965, the lands with respect to which GRI made its application were subject to the following existing mining claims:

(a) Huntley No. 33, which was located on September 15, 1954; and

(b) Kaolinite Nos. 22 through 50, all of which were located on September 21, 1960.

(A.R., 102–04; 115–46)

20. On or about December 18, 1973, the Department announced in writing that certain lands within the State of California, including those which GRI sought to convert (hereinafter "Leasing Unit No. 2"), would be offered for competitive geothermal resource leasing and invited bids thereon. (A.R., 542–46) The announcement set forth as one of the terms of sale that Leasing Unit No. 2 was subject to the conversion rights of GRI and George D. Rowan. The announcement was published in the *Federal Register* on December 21, 1973 (Vol. 38, No. 245, at 3529–31).

21. On or about January 14, 1974, GRI's application for conversion rights was approved by the Secretary. (A.R., 22–24); notice of the approval was published in the *Federal Register* on January 18, 1974 (Vol. 39, No. 13, at 2281–82).

22. On or about January 22, 1974, plaintiffs Getty and Mono submitted a bid of $98,592.00 on Leasing Unit No. 2. Their bid was submitted without objection to GRI's or Rowan's claims to conversion rights and the Secretary's approval thereof. (A.R., 524) On or about that same date, GRI submitted a bid of $9,480.00 on said Leasing Unit No. 2. (A.R., 519)

23. On or about February 21, 1974, the bid made by Getty and Mono on Leasing

Unit No. 2 was accepted by the Secretary as the high bid on the lands in question subject to the conversion rights previously granted GRI. (A.R., 520–21)

24. On or about April 24, 1974, GRI was given notice by the Department that it had a period of 30 days within which to exercise its right to convert its existing mining claims to a geothermal lease on Leasing Unit No. 2 by matching the bid made by Getty and Mono. (A.R., 506–07)

25. On May 21, 1974, GRI notified the Department in writing of its election to exercise its right to convert its mining claims to a geothermal steam lease and to meet the bid made by Getty and Mono. (A.R., 490–92) With its letter, GRI submitted all information necessary to show its qualifications to hold a geothermal lease.

26. On or about July 10, 1974, the Department notified GRI in writing of the timeliness and completeness of its exercise of its conversion rights. (A.R., 480–81) With its letter of July 10, 1974, the Department furnished GRI with forms for the relinquishment of its mining claims so that Geothermal Resources Lease No. CA–962 could be issued. (A.R., 480) As part of the consideration for the issuance of the lease, GRI completed and returned the relinquishments to the Department. (A.R., 473)

27. At all times material hereto, there existed an administrative procedure by which plaintiffs could have objected to any action proposed to be taken in any proceeding before the Bureau, including the Bureau's consideration of GRI's application for conversion rights, by filing a protest. Title 43 C.F.R. § 4.450–3.

28. Neither Getty and Mono filed a protest or otherwise objected (as provided for by 43 C.F.R. § 4.450–2) to GRI's application for conversion rights at any time prior to the Secretary's approval of GRI's conversion rights on January 14, 1974. The protest by Getty and Mono was not sent to the Department until August 5, 1974. (A.R., 261–64) The protest was based upon the following claims by Getty and Mono:

(a) That the application for grandfather rights was not timely filed;

(b) That GRI did not have "existing mining claims" upon which to predicate its application;

(c) That the geothermal wells upon which the grandfather rights application were based were not actually drilled upon the lands sought to be leased or "adjoining, adjacent or nearby Federal or non-Federal lands";

(d) That there was reliance upon the same development work relied upon by another applicant; and

(e) That under the Act there must be a full disclosure of all parties' interest and that such disclosure had not been made.

29. Prior to ruling on the protest, the Department requested that GRI furnish additional information with respect to the chain of title to its mining claims. (A.R., 223) In December, 1974, GRI furnished the Department with copies of the assignments pursuant to which Standard Industrial assigned the mining claims to Magma in March, 1971 and by which Magma assigned the mining claims to GRI in June, 1971. (A.R., 223) Thus, copies of these documents were before the Department prior to and at the time of the Secretary's ruling on plaintiffs' protest.

30. On February 13, 1975, the Secretary dismissed plaintiffs' protest as untimely because it was not made until after the Department's action approving GRI's application. The Secretary also considered on the merits and rejected each of the five grounds relied upon by plaintiffs in support of their protest. (A.R., 158–62)

31. On or about February 19, 1975, the Secretary issued Geothermal Resources Lease No. CA–962 to GRI for the federal lands at issue in this action.

32. This action was filed April 11, 1975.

33. On or about April 21, 1975, GRI assigned an undivided 50% interest in said lease to Chevron. (A.R., 412–17) The assignment is subject to the approval of the Bureau.

34. The Court finds in all respects as set forth in the Conclusions of Law following these Findings of Fact.

## CONCLUSIONS OF LAW

■ 1. The value of Geothermal Resources Lease No. CA–962 exceeds $10,000.00 and the case involves an interpretation of the Geothermal Steam Act of 1970 (84 Stat. 1566, 30 U.S.C.A. §§ 1002, 1003 and 1023). The Court therefore has original federal question jurisdiction under 28 U.S.C.A. § 1331.

2. Inasmuch as the Amended Complaint seeks declaratory relief, this Court also has jurisdiction under 28 U.S.C.A. §§ 2201 and 2202 giving jurisdiction to federal courts to grant declaratory relief.

■ 3. Inasmuch as the Amended Complaint seeks an order of this Court compelling the Secretary of Interior to cancel Geothermal Resources Lease No. CA–962 issued to GRI and to issue that lease to plaintiffs Getty and Mono, this Court also has jurisdiction under 28 U.S.C.A. § 1361 which gives district courts original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty allegedly owed to the plaintiff.

4. Venue is properly placed in the Central District of California under 28 U.S.C.A. §§ 1391(b), (c) and (e).

5. This is an action for judicial review of actions of an administrative agency, namely the January 14, 1974 decision of the Secretary of Interior approving GRI's application for conversion rights and the Secretary's February 13, 1975 dismissal of plaintiffs' protest thereof and the issuance of the proposed lease to GRI. The February 13, 1975 decision by the Secretary dismissing plaintiffs' protest to the Secretary's award of conversion rights to GRI proposed lease issuance constituted the final administrative action by the Secretary.

■ 6. This Court's review of the actions of the Secretary is governed by the standards set forth in the Administrative Procedure Act, 5 U.S.C.A. §§ 701–706. Under the Administrative Procedure Act, the scope of this Court's review of the actions of the Secretary is narrow and is limited to a determination whether (a) the actions of the Secretary were arbitrary, capricious or an abuse of discretion, and (b), whether the actions of the Secretary were supported by substantial evidence in the administrative record before the Department of Interior. In making these determinations, the Court is strictly confined to the contents of the administrative record.

■ 7. The January 14, 1974 decision of the Secretary approving GRI's application for conversion rights and the Secretary's February 13, 1975 dismissal of plaintiffs' protest thereto were not arbitrary, capricious, or an abuse of discretion and were fully supported by substantial evidence in the administrative record.

■ 8. GRI's application for conversion rights was timely in that:

(a) The filing of GRI's application with the Sacramento, California office of the Bureau on June 22, 1971 was in full compliance with the requirement of Section 1003 of the Act and the applicable regulation promulgated thereunder (43 C.F.R. § 3230.3–1(a)) that applications for conversion rights be filed within 180 days following December 24, 1970. Neither the Act nor the applicable regulation require applications for conversion rights to be filed in a particular office of the Bureau;

(b) The January 15, 1971 notice issued by the Department and published in the *Federal Register* (Vol. 36, No. 10) stating that applications were to be filed in the land office having jurisdiction over the lands in question had no force and effect as a Departmental regulation and provided no penalties for filing in a Bureau office not having jurisdiction over the lands in question;

(c) Even if GRI's application were required to be filed in the Riverside office of the Bureau, the Secretary had authority to modify his procedural rules to accept the application as timely;

(d) In any event, the Secretary was estopped from enforcing the requirement, if any, that GRI's application be filed in Riverside because Bureau officials in both

the Sacramento and Riverside offices of the Bureau informed counsel for GRI that GRI's application should be filed with the Sacramento, not the Riverside office.

9. There is substantial evidence in the administrative record that as of the date of its application, GRI held title to existing mining claims on the federal lands for which it sought conversion rights, which claims were located prior to September 7, 1965. The Act does not require that the mining claims sought to be converted have been valid mining claims or that there have been discovery of a mineral of commercial value on the lands subject to the mining claims in order for the claims to be considered "existing" mining claims within the meaning of the Act.

10. The administrative record contains substantial evidence that the entity now known as GRI (as opposed to a predecessor in interest) made substantial expenditures for the exploration, development or production of geothermal steam prior to the date of its application.

11. Although there is substantial evidence that GRI relied upon its own expenditures rather than those of a predecessor in interest, it could have relied upon those of a predecessor in interest. The Secretary's applicable regulation (43 C.F.R. § 3230.1–5(a)) permitting an applicant to rely on geothermal expenditures made by its predecessor in interest was promulgated by the Secretary within the scope of his statutory authority and is not contrary to the purpose of the Act.

12. The substantial geothermal expenditures were made by GRI on private lands adjoining, adjacent, or nearby the federal lands for which it sought conversion rights.

13. The Act did not require (a) that the substantial geothermal expenditures have been made by GRI on the federal lands for which its conversion rights were sought, or (b) that GRI have performed its geothermal work prior to or while holding title to the mining claims on which it based its application.

14. GRI's exercise of its conversion rights was in full compliance with the Act's applicable disclosure requirements in that:

(a) The requirements for GRI's exercise of its conversion rights are set forth in Sections 1003 and 1015 of the Act and the applicable regulations promulgated thereunder (43 C.F.R. §§ 3202.1 and 3230.1–6(a)(2)(i)–(iv) (which section incorporates section 3210.2–1(d) and (e));

(b) Neither the Act nor the applicable regulations required that GRI, as the owner of conversion rights, submit a sole party-in-interest statement in order to exercise its conversion rights;

(c) GRI submitted in a timely manner and in full compliance with the Act and the regulations all information required to exercise its conversion rights;

(d) Even if GRI were required to submit a sole party-in-interest statement,

(i) GRI complied in full with that requirement by its full disclosure to the Secretary, prior to the Secretary's ruling on plaintiffs' protest, of any and all interests in the geothermal lease, including the two percent (2%) overriding royalty interest to be issued to Standard Industrial, and these interests were considered by the Secretary at the time he made his final decision on plaintiffs' protest; and

(ii) in any event, neither the Act nor the regulations provided any penalty for the failure by a conversion right owner to submit such a statement at the time of its exercise of conversion rights and permitted any such defect to be cured.

15. Although this Court concludes that the Secretary's decision was not arbitrary, capricious or an abuse of discretion and was fully supported by substantial evidence in the administrative record, this

Court also concludes that, to the extent that any of the contentions raised by plaintiffs in this Court were not raised before the Department of Interior at the appropriate time during the administrative proceedings in the Department, plaintiffs are precluded from raising such contentions for the first time in this Court by the doctrines of exhaustion of administrative remedies and waiver.

16. The Secretary's action approving GRI's application for conversion rights was valid administrative action. However, if it were not, GRI would still have rights to mining claims on the lands for which conversion rights were sought. Under the applicable regulation (43 C.F.R. § 3230.1–1), those mining claims are deemed effectively relinquished only upon the issuance of a geothermal lease based upon the exercise of conversion rights.

17. Plaintiffs are not entitled to the relief prayed for, or any other relief. GRI, Chevron and the Secretary are entitled to recover from Getty and Mono, jointly and severally, their costs herein incurred.

LET JUDGMENT BE ENTERED ACCORDINGLY.