**Emma WAGNER, Plaintiff,**

v.

**CHEVRON OIL COMPANY,
a Delaware corporation,
et al., Defendants.**

**No. CV–N–03–0504–ECR.**

United States District Court,
D. Nevada.

June 7, 2004.

Wallace D. Stephens, Stephens, Knight & Edwards, Reno, NV, for Plaintiff.

W.C. Wicker, Woodburn & Wedge, Reno, NV, Dale E. Ferguson, W.C. Wicker, Woodburn & Wedge, Reno, NV, Craig D. Galli, Lindsay L. Hola (Pro Hac Vice Firm), Holland & Hart, LLP, Salt Lake City, UT, T.R. Guy, Weil, Gotshal & Manges, Dallas, TX, Brent T. Kolvet, Thorndal Armstrong Delk, et al., Reno, NV, for Defendants.

### *ORDER*

EDWARD C. REED, JR., District Judge.

On August 7, 2003, Plaintiff Emma Wagner ("Plaintiff") filed a 171–page complaint (attached to doc. # 1) in the Third Judicial District Court of the State of Nevada in and for the County of Churchill. The complaint alleges that Plaintiff has not received her fair share of the proceeds from the Soda Lake Unit Area ("Soda Lake Unit" or the "Unit"), which was created in 1977. Although the complaint is not entirely clear as to what Plaintiff claims, it appears that Plaintiff is alleging that her parcels of land (specifically the geothermal resources underlying her land) were joined in the Unit and are currently being used to produce electricity, but were improperly excluded from the Participating Area.

On September 12, 2003, the Defendants that had been served in the above-entitled action—Chevron USA, Inc., Western States Geothermal Company, Ormat Nevada, Inc., Daniel Schochet, OESI Power Corporation, Amor III Corporation, AMOR 17 Corporation, Nevada Operations, Inc., Geor III Corporation, Soda Lake Resource Partnership, Soda Lake Limited Partnership, Amor IX Corporation, CD Soda SLR, Inc., CD Soda I, Inc., CD Soda II, Inc., Constellation Energy Group, Inc., Constellation Holdings, Inc., Constellation Investments, Inc., Constellation Operating Services, Inc., Constellation Operating Services, COSI–ULTRA, Inc., COSI–ULTRA II, Inc., Constellation Power, Inc., Steven King, Harbinger Soda Lake Holdings LLC, Harbinger Soda Lake I LLC, Harbinger Soda Lake II LLC (collectively the "Defendants")—filed a notice of removal (# 1) pursuant to 28 U.S.C. § 1441(b).[1] Soon thereafter, Defendant Prudential Insurance Company of America ("Prudential"), which did not join in the notice of removal (# 1), filed its consent (# 2) to the removal of the action to this court. Once defendant U.S. Bank National Association, the successor by merger to U.S. Bank Trust National Association, was finally served, it filed a separate consent (# 22) to removal.

On September 19, 2003, Defendants filed an answer and three counterclaims (# 3).[2]

---

**1.** Plaintiff does not dispute that the notice of removal (# 1) was timely filed under 28 U.S.C. §§ 1441(b) and 1446(b) because the notice was filed "within thirty days after the receipt of defendant" of a copy of the initial pleading. Plaintiff served the first summons on August 18, 2003, and Defendants filed their motion on September 12, 2003.

**2.** Defendant Prudential filed its answer (# 18) on October 24, 2003.

Then, on October 9, 2003, Plaintiff filed a motion to remand (# 14), a motion to dismiss (# 15) the counterclaim, and a memorandum (# 16) in support of the motion to remand and the motion to dismiss. Defendants filed an opposition (# 26) to the motion to remand, which defendant Prudential joined (# 29), and Plaintiff replied (# 27) to said opposition (# 26). Plaintiff's motion to remand (# 14), which asserts that we are without federal-question jurisdiction to decide Plaintiff's state-law causes of action, is now ripe. We now rule on said motion.[3]

## I. BACKGROUND INFORMATION

### A. What is a Geothermal Resource?

The Ninth Circuit has summarized various authorities and explained the nature of geothermal resources as follows:

> Various elements cooperate to produce geothermal power accessible for use on the surface of the earth. Magma or molten rock from the core of the earth intrudes into the earth's crust. The magma heats porous rock containing water. The water in turn is heated to temperatures as high as 500 degrees Fahrenheit. As the heated water rises to the surface through a natural vent, or well, it flashes into steam. Geothermal steam is used to produce electricity by turning generators.

*United States v. Union Oil Co. of Cal.*, 549 F.2d 1271, 1272 (9th Cir.1977). (citing *Reich v. Comm'r, of Internal Revenue*, 52 T.C. 700, 704–05, 1969 WL 1674 (1969), *aff'd*, 454 F.2d 1157 (9th Cir.1972); H.R.Rep. No. 91–1544, *reprinted in* 3 U.S.C.C.A.N. 5113, 5114 (1970); Brooks, *Legal Problems of the Geothermal Industry*, 6 Nat. Resources J. 511, 514–15 (1966); Barnea, *Geothermal Power*, Sci. Am., Jan. 1972, at 70, 74). Nevada Revised Statutes ("NRS") 534A.010 similarly defines a "geo-

thermal resource" as "the natural heat of the earth and the energy associated with that natural heat, pressure and all dissolved or entrained minerals that may be obtained from the medium used to transfer that heat, but excluding hydrocarbons and helium."

Unlike mineral deposits and oil and gas resources, a geothermal resource is not a portable, physical commodity that can be easily removed; therefore, geothermal energy must be exploited on the lands from which it is removed. However, many of the opportunities for development of geothermal resources are found on public lands, under the authority of either federal or state officials. *See* Robert B. Keiter, *The Old Faithful Protection Act*, 14 Pub. Land L.Rev. 5, 9–10 (1993). Prior to the passage of the Geothermal Steam Act in 1970, the Department of the Interior ("DOI") took the position that it lacked authority to dispose of geothermal resources under its jurisdiction. H.R.Rep. No. 91–1544 (1970), *reprinted in* 3 U.S.C.C.A.N. 5113, 5115. Since no existing law authorized the exploration or development of lands owned by the United States, the DOI had a policy that any attempt to exploit geothermal rights on lands owned by the United States constituted trespass against the United States. Keiter, *supra*, at 9–10. This policy and the lack of DOI authority seriously impaired the development of geothermal resources. H.R.Rep. No. 91–1544 (1970), *reprinted in* 3 U.S.C.C.A.N. 5113, 5115.

Eventually, Congress passed the Geothermal Steam Act of 1970 ("Geothermal Steam Act" or the "Act"), thereby recognizing that it was in the public interest to enact federal law to create a legal framework to permit the development of geothermal resources on federal lands. *See* Steven R. McNutt, *Rosette, Inc. v. United*

---

**3.** On May 19, 2004, we held a hearing on the    Motion to Remand (# 14).

*States: Is the United States Full of Hot Air When it Comes to the Reservation of Geothermal Resources as a "Mineral?"*, 8 Great Plains Nat. Resources J. 44, 47 (2003). Congress recognized that "geothermal power stands out as a potentially invaluable untapped natural resource" and that "[t]he Nation's geothermal resources promise to be a relatively pollution-free source of energy, and their development should be encouraged." H.R.Rep. No. 91–1544 (1970), *reprinted in* 3 U.S.C.C.A.N. 5113, 5115.

Although the main thrust of the Geothermal Steam Act is to empower the DOI with the authority to lease federal land to develop geothermal resources, 30 U.S.C. § 1002, the Act also permits federal lessees to join a "cooperative or unit plan of development or operation" with each other or "others" (privately-owned or state-owned land) for the purpose of "properly conserving the natural resources of any geothermal pool, field, or like area ... whenever this is determined and certified by the Secretary to be necessary or advisable in the public interest." 30 U.S.C. § 1017; *see* H.R.Rep. No. 91–1544 (1970), *reprinted in* 3 U.S.C.C.A.N. 5113, 5116 ("[The Geothermal Steam Act] provides statutory authority for the Secretary of the Interior to issue leases for the development of geothermal steam and the associated geothermal steam resources underlying the public lands .... "). Nevada state law does not either expressly authorize or prohibit the formation or operation of such cooperative units. *See* NRS 534A.010 to .090.

## B. Plaintiff's Complaint

Plaintiff alleges that she owns approximately 860 acres of land that was committed to the Soda Lake Unit, a geothermal cooperative unit located in Churchill County, Nevada, and formed in 1977. Plaintiff allegedly owned the different parcels of land either (1) as community property with her husband, Warren O. Wagner, (2) through her community property interest in two corporations, American Market Research Corporation ("AMR") and Prosit, Inc., or (3) as the beneficiary of a trust administered by University of South Florida Foundation, Inc. ("USFF") as trustee. After the administration of Warren Wagner's estate was completed sometime in 2000 or 2001, Plaintiff alleges that she became the sole owner of the subject parcels of land because she either owned or succeeded to the following interests: (1) her community property interest in the subject properties, (2) her late husband's community property interest in the subject properties, (3) the interest held by both her corporations (AMR and Prosit), and (4) the interest held in the trust administered by USFF, to which she was a beneficiary. Thereafter, Plaintiff allegedly became the outright owner of all 860 acres of land, including the geothermal resources that are the subject matter of this dispute.

Warren Wagner, AMR, and USSF (as trustee) allegedly leased the working interests in the geothermal resources underlying Plaintiff's land to Phillips pursuant to separate lease agreements, which were executed in 1973. In 1977, Phillips then allegedly joined the Soda Lake Unit and committed Plaintiff's land to the Unit by signing the Unit Agreement with the written consent of Warren Wagner. Plaintiff alleges that neither she nor any other interested party withdrew her land from the Unit and, therefore, her land is still joined in the Unit. A 1978 DOI memorandum, which was addressed to the Bureau of Land Management ("BLM"), allegedly indicates that Plaintiff's land was "fully committed" to the Unit.

The complaint further alleges that exploratory wells were drilled from 1977 through 1982 to search for a well capable of commercial productivity. Phillips,

which held the working interest share in Plaintiff's geothermal resources at that time, allegedly paid its proportionate share of the exploratory costs. In July 1982, the DOI confirmed that Chevron had located a well that conformed to the requirements of the Unit Agreement.

Although Plaintiff's complaint alleges that Plaintiff's land was fully committed to the Unit and was never withdrawn from the Unit, Plaintiff alleges that Chevron Resources Company, a division of Chevron Industries, Inc., represented to Plaintiff in 1983 that her land was "never included in this Unit" and offered her an opportunity to join the Unit. However, various documents approved by the BLM in 1983 allegedly show that Plaintiff's land was still committed to the Unit.

In July 1985, Phillips allegedly sold, assigned and/or transferred its interest in Plaintiff's geothermal resources to Western States without prior notice to or consent from Plaintiff. Then, in April 1986, Chevron and/or Chevron Resources allegedly acquired the geothermal assets of Western States, including its leasehold interest in Plaintiff's geothermal resources, without notice to and consent from Plaintiff. However, in August 1986, the leases terminated and/or were released and the working interest in the geothermal resources on Plaintiff's land became vested in Plaintiff and/or her corporation, AMR.

Thereafter, in 1987, Plaintiff alleges that Chevron Resources, as agent for Chevron, proposed a Participating Area that excluded certain tracts of Plaintiff's land even though Plaintiff alleges that her land should have been included. The BLM allegedly approved the Participating Area without the inclusion of a portion of Plaintiff's land. However, Plaintiff alleges that she recently discovered a revised map that indicates that all of her land *was* committed to the Participating Area. Despite these somewhat conflicting allegations in the complaint, it appears to the court that Plaintiff is in fact alleging that she was included in the Unit Agreement, but was excluded from the Participating Area.

In December of 1987, production of electric power commenced through the use of geothermal resources from the Participating Area, which allegedly harvested Plaintiff's geothermal resources, but did not include Plaintiff's land in the Participating Area itself. Although the Soda Lake Unit and Sierra Pacific Power Company entered into a long-term agreement for the sale of power, Plaintiff was not compensated for her working interest share in said proceeds.

Plaintiff alleges that the Defendants in this case committed various acts that deprived Plaintiff of her pro rata working interest share of the Soda Lake Unit. The Plaintiff alleges ten different causes of action against the Defendants, including: (1) Action to Determine Conflicting Claims to Real Property and to Quiet Title in Geothermal/Mineral Rights; (2) Action to Determine Conflicting Claims to Interests in Property, to Quiet Title in Unitized Land, Unitized Substances, Working Interests, Basic Royalty & Ownership Percentages, and Pro Rata Share of Real and Personal Property in the Soda Lake Unit/Participating Area, and for Declaratory Relief; (3) Claims for Breaches of Contracts and for Declaratory Relief; (4) Accounting; (5) Specific Performance and/or Injunction; (6) Constructive Trust/Breach of Trust; (7) Quasi–Contract, Restitution, and Unjust Enrichment; (8) Fraud, Deceit, Breach of Covenants of Good Faith and Fair Dealing, and/or Interference with Contract Relations, Sounding in Tort; (9) Slanders and Disparagements of Title and for Declaratory Relief; (10) Willful Trespass, Drainage, Waste and/or Conversion. All of the aforementioned causes of action are, at least facially, based on state law.

Plaintiff apparently seeks a finding that Plaintiff's lands are included in the Unit—and are thus "Unitized Land" and "Unitized Substances"—and she requests a determination that her land is committed to the Soda Lake Unit. Plaintiff also demands an accounting for her pro rata working interest share of the Unit's net profits that she alleges should have been allocated to her approximately seven percent working share interest in the Unit's Participating Area.

Although the nature of Plaintiff's complaint is complex, confusing, and somewhat contradictory, we read Plaintiff's complaint to allege that her land was included in the Soda Lake Unit by Phillips with the written consent of Wagner. Phillips, as lessee, paid its proportionate share of exploration costs, and then sold or released its interests in Plaintiff's land. Eventually, the interests in the land became vested in Plaintiff. At no time did Plaintiff or her predecessors withdraw her land from the Unit. Then, *in breach of the Unit Agreement,* some tracts of Plaintiff's land were excluded from the Participating Area even though Plaintiff remained a party to the Unit Agreement and her land was within the boundaries of the proposed Participating Area.

To summarize, we interpret Plaintiff's complaint to allege (1) that her land was included in the Unit, (2) that her predecessor, Phillips, paid the appropriate exploratory costs, (3) that neither Phillips nor she withdrew from the Unit, and, thus, (4) according to the terms of the Unit Agreement, she should have been included in the Participating Area because her land was included in the Participating Area's proposed boundaries. Therefore, the Defendants *breached the Unit Agreement* by excluding Plaintiff from the Participating Area.

## II. LAW OF REMOVAL AND FEDERAL–QUESTION JURISDICTION

### A. The Removal Statute

Under the right set of circumstances, a defendant may remove a civil action filed in state court under 28 U.S.C. § 1441(b), which provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." However, a federal court must remand the case if it is without subject-matter jurisdiction to decide the case. *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality,* 213 F.3d 1108, 1113 (9th Cir.2000). Furthermore, the presumption is against removal and the defendant must establish the federal court's jurisdiction because the removal statute is "strictly construed against removal jurisdiction." *See Hofler v. Aetna U.S. Healthcare of Cal., Inc.,* 296 F.3d 764, 767 (9th Cir.2002) (citation omitted); *In re Cal. Retail Natural Gas & Elec. Antitrust Litig.,* 170 F.Supp.2d 1052, 1056 (D.Nev. 2001) (Pro, J.).

### B. Federal–Question Jurisdiction

Since both parties agree that this case does not invoke diversity jurisdiction under 28 U.S.C. § 1332, the "propriety of removal turns on whether the case falls within the original 'federal question' jurisdiction of the United States district courts." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (citation omitted). Although Article III of the Constitution provides that federal courts have the power to hear cases "arising under" federal law, U.S. Const. art. III, § 2, cl. 1, the Constitutional grant of power to the federal courts is not self-executing, *Merrell Dow Pharm. Inc. v. Thompson,*

478 U.S. 804, 807, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Rather, it was the Judiciary Act of 1875 that first gave the federal courts general federal-question jurisdiction. *Id.*

The federal-question jurisdictional statute, as currently codified, states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As the Supreme Court has explained, "[s]ince the first version of § 1331 was enacted, the statutory phrase 'arising under the Constitution, laws, or treaties of the United States' has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Franchise Tax Bd.,* 463 U.S. at 8, 103 S.Ct. 2841 (citation omitted). Federal-question jurisdiction is not subject to a "single, precise definition" because the "phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229 (quoting *Franchise Tax Bd.,* 463 U.S. at 8, 103 S.Ct. 2841) (internal quotation marks omitted).

The Court has counseled that jurisdictional determinations under § 1331 "require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.* at 810, 106 S.Ct. 3229. As a result, federal-question jurisdiction has been "continuously construed and limited in light of the history that produced it, the demands of reason and coherence, and the dictates of sound judicial policy." *Id.* (quoting *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 379, 79 S.Ct. 468, 483, 3 L.Ed.2d 368 (1959)).

## C. The Well–Pleaded Complaint Rule

■ "As a general rule, the presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *ARCO,* 213 F.3d at 1113 (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)) (internal quotations and brackets omitted). Under the well-pleaded complaint rule, jurisdiction depends solely on the plaintiff's claims for relief and not on any anticipated federal defenses to those claims. *Id.; Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

■ The "vast majority" of federal-question cases are those brought under a federal law that itself creates a private cause of action. *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229. Clearly, such cases arise under federal law. *Id.* The more difficult question relates to cases, like the present case, where causes of action in the well-pleaded complaint, which are based on state law, interact with and relate to issues of federal law. In that case—where the claims in the complaint are at least facially based on state law—a claim may still arise under federal law if (1) federal law completely preempts the state law, (2) the claims are necessarily federal in nature, or (3) some substantial, disputed question of federal law is a necessary element of one of the plaintiff's well-pleaded state law claims. *ARCO,* 213 F.3d at 1114.

## III. ANALYSIS

### A. Complete Preemption

"Complete preemption is a narrow exception to the 'well-pleaded complaint rule.'" *Hofler,* 296 F.3d at 768 (quoting *Holman v. Laulo–Rowe Agency,* 994 F.2d

666, 668 (9th Cir.1993)); *see also Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 (commenting that an "independent corollary" to the well-pleaded complaint rule provides for federal jurisdiction when the "pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule") (internal citation and quotation omitted).

Complete preemption applies when a federal law "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Hofler*, 296 F.3d at 768 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)) (internal quotation marks omitted). The test for complete preemption is whether Congress intended to convert state common law claims into federal-question claims. *Id.* Most federal statutes do not completely preempt state law. *Id.*

In this case, neither party argues that the Geothermal Steam Act preempts plaintiff's state law claims, and we conclude that the Act does not do so. *See, e.g., Tex. Oil & Gas Corp. v. Phillips Petroleum Co.*, 277 F.Supp. 366, 371 (W.D.Okla.1967) (holding that state could force federal oil and gas lessees into pooling agreement pursuant to state law because Congress had not undertaken to assume exclusive control of federal mineral lands, and the pooling plan met the limited requirements imposed by the federal government)[4]; *see also* 43 C.F.R. § 3281.4 (2003) (permitting the incorporation of state law into the geothermal unit agreement to the extent that

state law is not applicable to federal lands); 43 C.F.R. § 3286.1 (stating in the model unit agreement that the Geothermal Steam Act and regulations thereto apply to federal land, and only apply to non-federal lands to the extent that the Act and regulations are consistent with the laws of the State in which the non-federal land is located). Since Plaintiff's claims involve application of state law to privately owned land, the complete preemption exception clearly does not apply in this instance.

## B. Necessarily federal in nature

■ "Under the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir.1996) (quoting *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir.1984)) (internal quotations omitted); *see also Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998) ("Artful pleading exists where a plaintiff articulates an inherently federal claim in state-law terms."). Therefore, a federal court may "recharacterize" an artfully pleaded state law claim as a federal claim upon removal. *Rains*, 80 F.3d at 344.

■ At the hearing, Defendants argued that whether a party with a geothermal interest has either joined or been improperly excluded from a geothermal unit is governed by express statutory provisions of the Geothermal Steam Act and the regulations promulgated thereto. *See* 30

---

4. Defendants have suggested that the court should analogize to federal oil and gas leases and cooperative units. The legislative history of the Geothermal Steam Act supports this interpretation, and we will treat oil and gas law as persuasive authority accordingly. *See* H.R.Rep. No. 91–1544 (1970), *reprinted in* 3

U.S.C.C.A.N. 5113, 5116 ("[The Geothermal Steam Act] provides statutory authority for the Secretary of the Interior to issue leases ... in much the same manner as he is now authorized to lease land for the development of their oil and gas deposits under the Mineral Leasing Act of 1920, as amended.").

U.S.C. §§ 1001—1025; 43 C.F.R. Part 3280 (including 43 C.F.R. Subparts 3280 to 3286). Defendants maintained that Plaintiff's claims that she was improperly excluded from the Soda Lake Unit involve construction and application of 43 C.F.R. § 3281.3 (a regulation passed pursuant to the Geothermal Steam Act, 30 U.S.C. § 1023), which provides that all property owners whose geothermal resources are to be developed and operated under a cooperative or unit agreement to create geothermal energy are "proper parties" and "must be invited to join as parties" to the unit agreement. If an owner fails to join the unit, the "proponent of the agreement should declare this to the authorized officer and should submit evidence of efforts made to obtain joinder of such owner and the reasons for non-joinder." *Id.* Defendants contend that Plaintiff's complaint will require the court to reach the question of whether Defendants pursued the proper procedures under § 3281.3 in excluding Plaintiff from the Unit, and the parties' conduct must be judged in accordance with the regulations passed pursuant to the Geothermal Steam Act.

However, Defendants apparently have misread Plaintiff's claims.[5] Plaintiff does not claim that she was excluded from the Soda Lake Unit, but that she, in fact, joined the Unit in 1977 and remains in the Unit, but that she has not received her proportionate working interest share of the Participating Area. Since Plaintiff alleges that she joined the Soda Lake Unit and never withdrew from the Unit, she alleges that her land should have been included in the Participating Area according to the terms of the Unit Agreement and the Participating Area's proposed boundaries previously approved by the BLM.

Although Plaintiff alleges that her land was excluded from the Participating Area, such a claim is distinct from a claim under § 3281.3 that a party was not invited to join the Unit itself.[6] We interpret the Unit Agreement to define a Participating Area as a subset of the Unit itself as an area from which geothermal resources are actually used to produce electricity.[7] Therefore, one could feasibly be in the Unit but not be in the Participating Area (if one's land was not productive), but one could not be in a Participating Area without joining the Unit itself. Therefore, Plaintiff's claims that she joined the Unit and is currently a party to the Unit Agreement is not inconsistent with her claims that she was improperly excluded from the Participating Area by Defendant's breach of the Unit Agreement.

Of primary importance here, such a claim—that Plaintiff is in the Unit, but excluded from the Participating Area—will involve interpretation of the Unit Agreement, but will not necessarily involve interpretation of federal law because Plaintiff's

---

**5.** Since the 171–page complaint is not a model of clarity, it is very easy to understand how Defendants could misinterpret Plaintiff's complaint to allege that she was excluded from the Soda Lake Unit. Under Nevada Rule of Civil Procedure 8, which mirrors Federal Rule of Civil Procedure 8, a pleading "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's 171–page complaint is anything but "short and plain."

**6.** The Model Unit Agreement defines a "Participating area" as "[t]hat part of the Unit Area which is deemed to be productive from a horizon or deposit and to which production would be allocated in the manner described in the unit agreement assuming that all lands are committed to the unit agreement." 43 C.F.R. § 3286.1, Model unit agreement, Art. II.

**7.** Since the Unit Agreement itself was not attached to the Notice of Removal, we will cite to the Model unit agreement, *see* 43 C.F.R. § 3286.1, which both parties agree is in relevant respects the same as the Soda Lake Unit Agreement.

claim that she was improperly excluded from the Participating Area is not covered by any express provision of the Geothermal Steam Act or the regulations passed thereto. Hence, Plaintiff's claims that she joined the Unit but was excluded from the Participating Area are not necessarily federal claims pursuant to § 3281.3, which prescribes the requirements for joining the unit itself and is not necessarily relevant to the determination of which parcels of land are included in the Participating Area. Defendants' compliance with § 3281.3 might provide Defendants with an affirmative defense that would rebut Plaintiff's assertion that she joined the Unit, but we do not believe that this defense transforms Plaintiff's state-law claims that she joined the Soda Lake Unit into claims that are necessarily federal in nature. *See ARCO*, 213 F.3d at 1113 (anticipated defenses do not confer federal-question jurisdiction).

Furthermore, while the federal regulations are silent regarding the regulation of Participating Areas except requiring the submission of three copies of a substantiating geologic and engineering report for federal approval and defining the term Participating Area, the Unit Agreement itself addresses both the definition of Participating Area and the method of selecting and updating the boundaries of the Participating Area. *See* 43 C.F.R. § 3283.3 (requiring three copies of reports concerning Participating Areas); 43 C.F.R. § 3280.0–5 (defining Participating Area as "[t]hat part of the Unit Area which is deemed to be productive from a horizon or deposit and to which production would be allocated *in the manner described in the unit agreement* assuming that all lands are committed to the unit agreement") (emphasis added). *But see* 43 C.F.R. § 3286.1, Model

unit agreement, Art. II (same definition for Participating Area) & Art. XII (describing procedures relating to forming and revising Participating Areas).

Furthermore, Plaintiff's claims will necessarily involve interpretation of the Unit Agreement. Article XII of the Unit Agreement provides for the formation and modification of Participating Areas, and is relevant to Plaintiff's claims that she was improperly excluded from the Participating Area. 43 C.F.R. § 3286.1, Model unit agreement. Article XIV, which governs the effect of the relinquishment of leases, will also likely require interpretation because Plaintiff alleges that her land is still joined in the Soda Lake Unit despite Phillip's assignment of its lease and the eventual expiration of that lease. *Id.*

Although the Unit Agreement is based upon the model unit agreement found at 43 C.F.R. § 3286.1,[8] the agreement is a contract and is susceptible to traditional state law contract analysis. In fact, it appears to this court that the Soda Lake Unit Agreement itself is susceptible to interpretation pursuant to state law independent of the Geothermal Steam Act or the regulations thereto. *See Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 72, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966) (concluding that court should apply state law, not federal common law, to interpret a contract dispute between private parties regarding the assignment of a federal oil and gas leasehold interest). State courts are equally adept at performing such an analysis under their own state law, and the fact that the United States is a party to the agreement or that the DOI administers the agreement does not, in itself, transform Plaintiff's state-law claims into ones that are necessarily federal in nature.[9]

---

8. *See, supra,* note 7.

9. If Plaintiff were directly challenging an administrative decision of the DOI or the BLM,

then our jurisdictional analysis would surely be different. *See* 43 C.F.R. § 3285.1 (providing for agency appeal); 5 U.S.C. §§ 701–06 (providing jurisdiction to review agency's fi-

In arguing that Plaintiff's claims "arise under" the Geothermal Steam Act, Defendants state that Plaintiff's claims are necessarily federal in nature because the Soda Lake Unit is a creation of federal law insofar as it would not exist without the authorization provided by 30 U.S.C. § 1017. Therefore, without the Geothermal Steam Act, the Unit could not and would not exist.

However, neither 43 C.F.R. § 3281.3 nor any section of the Geothermal Steam Act provides for a private cause of action or for federal jurisdiction over this dispute.[10] Plaintiff, as master of her complaint, has styled her claims as state-law property, contract and tort claims against private parties, and Plaintiff is not challenging any action of the BLM or a federal lessee.[11] Therefore, Plaintiff's state law claims for quiet title, breach of contract, an accounting, constructive trust, unjust enrichment, fraud, and declaratory relief do not appear to be "necessarily federal in nature." *See In re Cal. Retail Nat. Gas & Elec.*, 170 F.Supp.2d at 1059 (the proper inquiry in analyzing whether plaintiff's complaint arises under federal law is not to analyze the extent of a federal agency's power generally, but to interpret whether "Plaintiffs' claims, as Plaintiffs have pled them,

challenge conduct *within* [the federal agency's] exclusive domain").

This conclusion is bolstered by an in-depth analysis of the function and purpose of the Geothermal Steam Act and its regulations as they relate to Plaintiff's claims. While the Geothermal Steam Act provides authorization for the creation of cooperative units such as the Soda Lake Unit, the Act is primarily concerned with the creation and administration of federal leases. The Geothermal Steam Act's purpose is to provide the DOI with the authority to lease federal lands, and to regulate the terms and conditions that attach thereto, including the terms and conditions in unit agreements as they relate to federal lands. It appears to the court that the regulatory scheme is concerned with administering the leasing of federal land, and making sure that the federal land is being used to actually produce or seek to produce geothermal energy in accordance with public policy.

The provisions of the Geothermal Steam Act support this interpretation as they regulate (1) the leasing of federal lands and detailing federal lands subject to geothermal leasing, 30 U.S.C. §§ 1002 & 1014, (2) the competitive bidding process for selecting federal lessees, 30 U.S.C. § 1003,

---

nal decision under Administrative Procedure Act). However, Plaintiff is challenging the actions of the unit operator and other private parties.

**10.** Although Defendants cite *Getty Oil Co. v. Andrus*, 433 F.Supp. 1317, 1323 (C.D.Cal. 1977) for the proposition that federal courts have jurisdiction over disputes involving the Geothermal Steam Act, we do not read *Getty Oil* so broadly. *Getty Oil* involved an appeal from a decision of the Secretary of the Interior to convert the use of federal land from mining to geothermal energy production. *Id.* at 1320. In this case, Plaintiff's claims involve private land that she allegedly joined in the Soda Lake Unit, and do not involve either federal land, or judicial review of the decision

of any federal official. Thus, *Getty Oil* does not bridge the federal question jurisdictional gap. *See Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (Administrative Procedure Act does not provide an independent basis for jurisdiction and, therefore, jurisdiction must exist under § 1331).

**11.** We note that Defendants have not suggested that a federal lessee or the United States are proper parties to this litigation so as to invoke the commands of Fed.R.Civ.P. 19. Furthermore, we note that no motion for intervention under Fed.R.Civ.P. 24 has been made by any federal lessee or by the United States.

(3) the terms and conditions of rents and royalties of the federal lease agreements, 30 U.S.C. § 1004, (4) the duration of federal leases, 30 U.S.C. § 1005, (5) the acreage limitations for federal lessees, 30 U.S.C. § 1006, (6) the readjustment of federal lease terms and conditions, 30 U.S.C. § 1007, (7) the requirements on federal lessees to produce any valuable byproducts that the resources are susceptible to producing, 30 U.S.C. § 1008, (8) the relinquishment of a federal lease, 30 U.S.C. § 1009, (9) the suspension of operations of federal lessee, 30 U.S.C. § 1010, (10) the termination of federal leases, 30 U.S.C. § 1011, (11) the waiver, suspension or reduction of rental or royalty for a federal lessee, 30 U.S.C. § 1012, (12) the surface rights of federal lessees, 30 U.S.C. § 1013, (13) the citizenship requirements for federal lessees, 30 U.S.C. § 1015, (14) the coexistence of federal geothermal lessees with federal lessees of other uses of the land, 30 U.S.C. § 1016, (15) the prohibition of waste on federal lessees and the limitation of assignment of federal leases, 30 U.S.C. § 1022, (16) the incorporation of other provisions of federal law relating to the disposal or other conveyance of federal land with respect to geothermal resources, 30 U.S.C. § 1024, and (17) the federal reservation of mineral rights not associated with geothermal energy, 30 U.S.C. § 1025.

The Defendants correctly argue that the Geothermal Steam Act grants DOI some authority relating to the administration of cooperative geothermal units that include federal lessees. The primary section of the Geothermal Steam Act that authorizes the formation and administration of cooperative geothermal units is 30 U.S.C. § 1017.[12] Section 1017 empowers the DOI, but it also imposes some duties on the DOI related to the operation of such units as follows:

For the purpose of properly conserving the natural resources of any geothermal pool, field, or like area, or any part thereof, lessees thereof and their representatives *may* unite with each other, or jointly or separately with others, in collectively adopting and operating under a cooperative or unit plan of development or operation of such pool, field, or like area, or any part thereof, whenever this is determined and certified by the Secretary to be necessary or advisable in the public interest. The Secretary *may* in his discretion and with the consent of the holders of leases involved, establish, alter, change, revoke, and make such regulations with reference to such leases in connection with the institution and operation of any such cooperative or unit plan as he *may* deem necessary or proper to secure reasonable protection of the public interest. He *may* include in geothermal leases a provision requiring the lessee to operate under such a reasonable cooperative or unit plan, and he *may* prescribe such a plan under which such lessee shall operate, which *shall* adequately protect the rights of all parties in interest, including the United States. Any such plan *may*, in the discretion of the Secretary, provide for vesting in the Secretary or any other person, committee, or Federal or State agency designated therein, authority to alter or modify from time to time the rate of prospecting and development and the quantity and rate of production under such plan. All leases operated under any such plan approved or prescribed by the Secretary *shall* be excepted in determining holdings or con-

---

12. The DOI's authority also includes the power to promulgate regulations governing the formation and administration of the geothermal units in order to develop geothermal resources, 30 U.S.C. § 1023, and the ability to readjust the apportionment of production and royalties comprising the unit, 30 U.S.C. §§ 1007, 1017.

trol for the purposes of section 1006 of this title.

No more than five years after approval of any cooperative or unit plan of development or operation, and at least every five years thereafter, the Secretary *shall* review each such plan and, after notice and opportunity for comment, eliminate from inclusion in such plan any lease or part of a lease not regarded as reasonably necessary to cooperative or unit operations under the plan. In the case of a cooperative or unit plan approved before September 22, 1988, the Secretary *shall* complete such review and elimination within 5 years after September 22, 1988. Such elimination shall be based on scientific evidence, and shall occur only when it is determined by the Secretary to be for the purpose of conserving and properly managing the geothermal resource. Any lease or part of a lease so eliminated *shall* be eligible for an extension under subsection (c) or (g) of section 1005 of this title if it separately meets the requirements for such an extension.

When separate tracts cannot be independently developed and operated in conformity with an established well-spacing or development program, any lease, or a portion thereof, *may* be *pooled with other lands, whether or not owned by the United States, under a communitization or drilling agreement* providing for an apportionment of production or royalties among the separate tracts of land comprising the drilling or spacing unit when determined by the Secretary to be in the public interest, and operations or production pursuant to such an agreement shall be deemed to be operations or production as to each lease committed thereto.

The Secretary is hereby authorized, on such conditions as he *may* prescribe, to approve operating, drilling, or development contracts made by one or more lessees of geothermal leases, with one or more persons, associations, or corporations whenever, in his discretion, the conservation of natural products or the public convenience or necessity may require or the interests of the United States may be best served thereby. All leases operated under such approved operating, drilling, or development contracts, and interests thereunder, shall be excepted in determining holdings or control under section 1006 of this title.

30 U.S.C. § 1017 (emphasis added).

Although the Geothermal Steam Act gives the DOI some significant authority to regulate the terms and conditions of federal leases, the conduct of federal lessees, and the operation of cooperative units, such authority has to be implemented through regulations. A closer look at the regulations passed pursuant to the Geothermal Steam Act reveals that the purpose of the regulations is to "prescribe the procedure to be followed and the requirements to be met *by holders of Federal geothermal leases* and their representatives who wish to unite with each other, or jointly or separately with others, in collectively adopting and operating under a cooperative or unit plan for the development of any geothermal resources pool, field or like area, or any part thereof." 43 C.F.R. § 3280.0–1 (entitled "Purpose") (emphasis added). Therefore, the purpose of the regulations is to regulate the procedure to be followed "by holders of Federal geothermal leases" in forming geothermal cooperative units. It is not clear that regulations are meant to cover disputes amongst private parties and, therefore, the regulations' existence does not automatically transform Plaintiff's claims into ones necessarily federal in nature.

Defendants further argue that the claims of Plaintiff are necessarily federal in nature because two federal courts exer-

cised jurisdiction over disputes involving similar cooperative unit agreements arising under oil and gas law. *See Froholm v. Cox,* 934 F.2d 959 (8th Cir.1991) (reviewing state law claims of bad faith, fraud, and also challenging the BLM's administrative decision relating to an oil and gas cooperative unit without analyzing the court's jurisdictional basis to do so); *Norfolk Energy, Inc. v. Hodel,* 898 F.2d 1435 (9th Cir. 1990) (upholding BLM's administrative decision to fine appellants because BLM had authority to regulate non-federal lands in cooperative gas production units without questioning the court's jurisdiction to do so). However, *Norfolk* and *Froholm* are both distinguishable because both of those cases involved a challenge to an administrative decision of the BLM. In contrast, Plaintiff is not directly challenging any action of the BLM or the DOI.

Therefore, while an issue of federal law might arise in this case as it relates to BLM or DOI approval of the Soda Lake Unit or Participating Area, there is no direct challenge to any federal administrative action and no application of federal law (either the Geothermal Steam Act or its regulations) covers Plaintiff's claim; therefore, Plaintiff's claims are not necessarily federal in nature and *Froholm* and *Norfolk Energy* are distinguishable.[13] *See, e.g., In re California Retail Natural Gas,* 170 F.Supp.2d at 1058 (citing *ARCO,* 213 F.3d at 1113) ("The mere fact that a federal statute is mentioned in a complaint does not mean that a plaintiff's cause of action 'arises under' federal law.").

Finally, although Defendants argue that the NRS provides no statutory authority for a suit such as Plaintiff's, it is undisputed that state law expressly granted Plaintiff the rights to the geothermal resources underlying her land. NRS 534A.050 ("The owner of real property owns the rights to the underlying geothermal resources unless they have been reserved by or conveyed to another person."). In fact, it appears from the face of Plaintiff's complaint that the nature of this dispute is the status of Plaintiff's geothermal resources, which will be resolved by an analysis of a contract—the Soda Lake Unit Agreement—which is an issue traditionally reserved to state law. Therefore, despite the presence of the federally-authorized Soda Lake Unit, Plaintiff's claims are not necessarily federal in nature. *See Rains,* 80 F.3d at 344 (finding that artful pleading doctrine did not apply because plaintiff's claims were authorized by state law and no essential federal law was omitted in stating the well-pleaded state law claims).

## C. Substantial, disputed questions of federal law

▮ Even if the other two exceptions permitting federal-question jurisdiction over ostensibly state law claims do not apply, a case may still arise under federal law if "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *ARCO,* 213 F.3d at 1116. The mere presence of a federal issue in the plaintiff's cause of action under state law, however, does not automatically confer federal jurisdiction. *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir.2002) (citing *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. 3229). Rather, as Justice Cardozo explained: "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and

---

**13.** Although Defendants cite *Texas Oil & Gas Corp. v. Phillips Petroleum Co.,* 277 F.Supp. 366, 368 (W.D.Okla.1967) for the proposition that the property clause of the Constitution supports jurisdiction, this case is also inappo-site because it involved plaintiffs' leases on *federal* lands. In contrast, this case involves a dispute between private parties regarding privately-held land.

an essential one, of the plaintiff's cause of action ... The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (internal citation omitted)[14]; *see also United States v. Morros,* 268 F.3d 695, 700 (9th Cir.2001) (applying the same test).

Defendants assert that the terms used in Plaintiff's complaint, such as "unitized land" and "unitized substances," are creations of federal law and require interpretation of the Geothermal Steam Act and its regulations. At the hearing, Defendants pointed to a section of the complaint asserting that the "Court should find and declare that: All rights, titles and interests, including the 'Working Interests' and the 'Basic Royalty & Ownership Percentages' in the 'Unitized Lands' and 'Unitized Substances' ... should be declared to belong to Plaintiff and title thereto should be quieted in Plaintiff." (Pl.'s Compl., ¶ 258.) Therefore, Defendants argue that the relief that Plaintiff seeks is to have her land declared "unitized," which is a right created and defined under federal law. Since the terms that Plaintiff uses in her complaint are creations of federal law, her claims will necessarily involve interpretation and application of the definitions found in the federal regulations. 43 C.F.R. § 3280.0–5 (listing definitions for "Unit agreement," "Cooperative agreement," "Agreement," "Unit area," "Unitized land," "Unitized substances," "Unit operator," "Participating area," and "Working interest").

However, we believe that Defendants read too much into Plaintiff's complaint.

Although the regulations contain certain definitions that might become relevant in this case, the Unit Agreement itself contains similar definitions and terms. *See* 43 C.F.R. § 3286.1, Model unit agreement, Art. II—Definitions (listing definitions of "Geothermal lease," "Unit area," "Unit Operator," "Participating area," "Working interest," "Secretary," "Director," and "Authorized officer"). Furthermore, the Model Unit Agreement defines "Unitized Land" and "Unitized Substances" in Article V. 43 C.F.R. § 3286.1 ("All land committed to this Agreement shall constitute land referred to herein as 'Unitized Land'. All geothermal resources in and produced from any and all formations of the Unitized Land are unitized under the terms of this agreement and herein are called 'Unitized Substances.'"). Such terms are creations of the Unit Agreement and are capable of construction under traditional state law contract tools.

The fact that the interpretation of the Geothermal Steam Act or its corresponding regulations might provide a defense to Plaintiff's claims is not adequate to support federal-question jurisdiction, even if such defense—compliance with 43 C.F.R. § 3281.3—might be dispositive of Plaintiff's claims. *See Franchise Tax,* 463 U.S. at 14, 103 S.Ct. 2841 ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."). Plaintiff's somewhat contradictory complaint includes allegations that she joined the Unit, and that she was excluded from the Participating Area. However, we read the totality of the complaint to allege

14. Professor Chemerinsky notes that "the Court never has done better than Justice Cardozo's explanation in the *Gully* case" in terms of establishing a test for jurisdiction under § 1331 when the case is based on a state law cause of action. Erwin Chemerinsky, *Federal Jurisdiction* 283 (3d ed.1999).

that Plaintiff joined the Unit, but Defendants breached the contract by excluding her from the Participating Area and by not paying her a seven percent working interest share. Such claims necessarily involve interpretation of Articles XII and XIV of the Unit Agreement, but will not necessarily involve interpretation of any substantial, disputed issue of federal law.

Although Defendants argue that the Geothermal Steam Act defines certain terms of art that need interpretation to resolve Plaintiff's claims, we are not so convinced. First, the Unit Agreement itself includes definitions of some of these relevant terms, such as "unitized land" and "unitized substances." Second, to the extent that these terms are not included in the Unit Agreement itself and are essential to Plaintiff's claims, the Defendants have not pointed out any way in which the interpretation of these terms are "disputed." Since Defendants bear the burden of establishing removal jurisdiction, we do not believe that Defendants have met their burden of pointing out how these definitions are truly disputed such as to warrant the exercise of federal-question jurisdiction.

Therefore, the mere possibility that we might need to interpret these terms is not a sufficient "substantial, disputed" issue of federal law upon which to hang our jurisdictional hat. Although Plaintiff's complaint includes references to the Geothermal Steam Act, such references do not necessarily imbue her state law claims with federal-question jurisdiction. Since Congress did not provide for a private remedy covering Plaintiff's claims and such claims do not involve substantial, disputed issues of federal law necessary to resolution of Plaintiff's claims, federal-question jurisdiction is not present in Plaintiff's well-pleaded complaint.

Defendants also argue that courts consider Congressional intent to provide a federal forum in considering whether a case involves a substantial question of federal law. *Morris v. City of Hobart,* 39 F.3d 1105, 1111 (10th Cir.1994) (citing *Merrell Dow,* 478 U.S. at 812, 106 S.Ct. 3229). Defendants believe that Congress has evidenced such an intent in the Geothermal Steam Act. However, the Supreme Court has commented on the "need for careful judgments about the exercise of judicial power in an area of uncertain jurisdiction" and the presence of a federal issue as an element of the state tort is not the "kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Merrell Dow,* 478 U.S. at 814, 106 S.Ct. 3229.

Contrary to the arguments of Defendants, Congress did not provide any indication of an intent to create a federal forum for claims such as Plaintiff's. Although the DOI has power related to the formation, approval, and ongoing operations of such Units, the DOI has not extended its reach to the resolution of disputes between unit members, especially those involving non-federal lessees. Furthermore, Plaintiff is not disputing the decisions or actions of the DOI, which might trigger our jurisdiction upon judicial review under the Administrative Procedure Act or 43 C.F.R. § 3285.1. Therefore, given the need for "careful judgments about the exercise of judicial power in an area of uncertain jurisdiction," *Merrell Dow,* 478 U.S. at 814, 106 S.Ct. 3229, it appears to us that Congress did not intend to create a federal forum for Plaintiff's claims.

Defendants rely on *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 159 F.3d 1209, 1211 (9th Cir.1998), for the proposition that Plaintiff's state-law claims for tort and breach of contract should be removable because their subject matter involves a matter of exclusive federal jurisdiction. In *Sparta,* Sparta brought

state law claims sounding in contract and tort against a securities association, NASD, because NASD suspended trading on Sparta's secondary offering without explanation, which allegedly harmed investor confidence and undermined the offering. *Id.* The Court found that removal was proper because federal courts have "exclusive jurisdiction ... for suits brought to enforce the [Securities Exchange] Act or rules and regulations promulgated thereunder." *Id.* at 1211–12 (citation omitted).

In contrast to *Sparta,* Defendants in this case can point to no such Congressional direction of exclusive federal jurisdiction over geothermal Units and must rely solely on jurisdiction under 28 U.S.C. § 1331. The *Sparta* Court clearly stated that its decision would likely have been different if § 1331 was involved: "Sparta's argument [against federal-question jurisdiction] would have merit if jurisdiction in this case had been solely predicated on 28 U.S.C. § 1331, which was at issue in *Merrell Dow* and *Utley.* However, jurisdiction lies here not under 28 U.S.C. § 1331, but under 15 U.S.C. § 78aa which vests exclusive jurisdiction over claims concerning duties created by exchange rules in the federal courts." *Id.* at 1212. Therefore, Defendants reliance on *Sparta* is misplaced because its reasoning actually undermines Defendants position.[15]

Although Defendants are correct that there is a federal interest in geothermal resources, as evidenced by the Geothermal Steam Act, separation of powers principles dictate that "Congress, not the courts, decide whether the federal interest is sufficiently substantial to justify the creation of federal-question jurisdiction." *Nicodemus*

*v. Union Pac. Corp.,* 318 F.3d 1231, 1237 (10th Cir.2003). Furthermore, despite the fact that there are some persuasive policy reasons—including federal interests in the uniformity of the rules, the successful harvesting of alternative energy sources, and maintaining federal leases in good standing—for claims involving geothermal resources to provide federal questions, Congress has not created a federal forum for resolution of such claims and the Court's jurisprudence makes it clear that logic and policy do not necessarily override Congress' decision to not provide a federal forum. *See Franchise Tax,* 463 U.S. at 4, 103 S.Ct. 2841 ("Nevertheless, *for reasons involving perhaps more history than logic,* we hold that the lower federal courts had no jurisdiction to decide the question in the case before us ....") (emphasis added); *see also Nicodemus,* 318 F.3d at 1238 (concluding that the district court did not have federal-question jurisdiction because principles of federalism favor resolution of traditional state law causes of action arising under areas traditionally reserved to state law (such as tort, contract, and property law) in state court despite potentially significant federal interest in the resolution of railroad right-of-way grants in which the federal government granted the right-of-way and had a limited reverter).

In light of our analysis, we believe that this case is actually one arising under state law that might involve an insubstantial and/or undisputed federal issue. As a result, this case does not arise under federal law, and we do not have jurisdiction under 28 U.S.C. § 1331.

15. Likewise, Defendants reliance on *U.S. Valves, Inc. v. Dray,* 212 F.3d 1368 (Fed.Cir. 2000), is misplaced. *Dray* involved a state-law breach of contract claim with an essential patent issue. As such, the relevant jurisdictional statute was 28 U.S.C. § 1338(a), and not 28 U.S.C. § 1331. Therefore, federal jurisdiction was proper because Congress' intent to provide a federal forum for patent related cases (as evidenced by 28 U.S.C. § 1338(a)) was clear.

## IV. ATTORNEYS' FEES

■ 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A court may, in its discretion, award attorneys' fees if a defendant's removal, although "fairly supportable," is "wrong as a matter of law." *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1106 n. 6 (9th Cir.2000); *Ansley v. Ameriquest Mortgage Co.*, 340 F.3d 858, 864 (9th Cir.2003). However, this case involves jurisdictional issues that no federal court has directly addressed, and we find no evidence of misconduct or bad faith on behalf of defendants. *See Bearden v. PNS Stores, Inc.*, 894 F.Supp. 1418, 1424 (D.Nev.1995) (holding that award of attorneys' fees is inappropriate when removal was based on novel jurisdictional issue and no evidence of bad faith or tactical manipulation was evident). Furthermore, any cost incurred by Plaintiff as a result of Defendants misconstruing Plaintiff's 171–page complaint should be borne by Plaintiff.[16] As such, we decline to exercise our discretion to award attorneys' fees to Plaintiff.

## V. CONCLUSION

In light of the preceding, we find that this case does not arise under federal law. Rather, this suit involves state law causes of action involving non-substantial and/or undisputed federal issues. As a result, we do not have federal-question jurisdiction under 28 U.S.C. § 1331, and we must remand this case.[17]

*IT IS, THEREFORE, HEREBY ORDERED THAT,* as addressed above, we do not have jurisdiction to hear this action, and the Motion to Remand (# 14) is *GRANTED.* The case is *REMANDED* to the Third Judicial District Court of the State of Nevada in and for the County of Churchill pursuant to 28 U.S.C. § 1447(c).

*IT IS HEREBY FURTHER ORDERED THAT* the Motion to Dismiss (# 15) is *DENIED* as moot in light of our decision to remand this action to state court. Such denial is without prejudice. Plaintiff may renew such motion upon remand to the state court if so permitted by the state court in accordance with its rules of procedure.

*IT IS HEREBY FURTHER ORDERED THAT* the Motion for Attorneys' Fees (# 14) is *DENIED.*

*IT IS HEREBY FURTHER ORDERED THAT* the Clerk shall enter judgment accordingly.

---

16. *See, supra,* note 5.

17. Our holding that we are without federal-question jurisdiction does not necessarily mean that the doctrine of exhaustion of remedies may not factor into the resolution of this dispute. *See Froholm,* 934 F.2d at 964 (upholding district court's decision to apply exhaustion doctrine to dismiss a challenge to participating area in oil and gas unit because BLM has continuing jurisdiction to revise participating area and plaintiffs had administrative remedies available to them). Although we are without jurisdiction to decide this issue, it appears to us that the appropriate forum for this dispute might be through the authorized officer at the BLM. *See* 43 C.F.R. § 3286.1, Model unit agreement, Art. XII.